# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JEFFREY E. BURKE and LISA SONGER-BURKE, | )<br>)<br>) Case No. 14-cv-285 |
| Plaintiffs, | )<br>) Judge Robert M. Dow, Jr. |
| v. | ) |
| JOHN MANEELY COMPANY, individually and d/b/a WHEATLAND TUBE COMPANY, and JOHN MANEELY COMPANY, individually and d/b/a JMC STEEL GROUP, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants, | ) |
| v. | ) |
| RANCO TRANSPORTATION, LLC, | ) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Jeffrey Burke ("Burke") and his wife Lisa Songer Burke ("Songer Burke") (collectively, "Plaintiffs") brought suit against Defendants John Maneely Company, individually and d/b/a Wheatland Tube Company and JMC Steel Group (collectively, "JMC") for damages arising out of Burke's fall from a height at JMC's steel tube plant in Chicago. JMC filed a third-party complaint against Burke's employer, Ranco Transportation, LLC ("Ranco"), alleging that Ranco owes it contribution (Count I), contractual indemnity (Count II), and damages for breach of contract (Count III). Before the Court is Ranco's motion [68] for partial summary judgment in its favor and against JMC on JMC's claim for contractual indemnity (Count II). For the reasons stated below, Ranco's motion [68] is granted.

**I.     Background[1]**

JMC operates a steel tubing plant in Chicago. Burke was an employee of Ranco during the time relevant here. On December 9, 2013, Burke went to JMC's plant to pick up a load of tubes and/or pipes with his flatbed truck. While attempting to manually cover his load with a tarp, Burke fell from his flatbed truck and was injured. Burke and his wife brought suit against JMC in Cook County Circuit Court for premises liability based on JMC's negligence and/or willful and wanton acts and for loss of consortium. See [1] at 4-17. Plaintiffs allege that JMC's careless and negligent acts and omissions—including failing to allow Burke to use its tarping system, failing to provide a jump line and harness or fall protection, allowing Burke to climb and work on steel pipe and tubing that had been treated with an oily material, and failing to warn Burke of the dangerous conditions—resulted in Burke slipping on oily pipes and/or tubes while attempting to place a tarp over his load, falling 13 feet, and incurring physical injuries. *Id.* at 5-6. See also [70] at 3, ¶ 10; [76] at 2, ¶ 10.

JMC removed the lawsuit to this Court based on diversity jurisdiction. See *id.* at 1-3. JMC filed a third-part complaint [41] against Ranco alleging that Ranco owes it contribution (Count I), contractual indemnity (Count II), and damages for breach of contract (Count III). In Count II—the only count on which Ranco seeks summary judgment—JMC alleges that it is a third-party beneficiary of a contract between Mercer Transportation Co. ("Mercer") and Ranco to broker the load of pipe/tubing from which Burke fell (the "Contract," [41] at 33-34). The Contract was signed in 2013. Ranco disputes that JMC is a third-party beneficiary to the Contract, but admits that the Contract exists and that it contains the following provision:

> Carrier * * * agrees to indemnify, defend, and hold harmless Broker, Shippers and Consignees, from and against all losses, damages, injuries and/or claims for same

---

[1] The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements ([70] and [76]).

2

> asserted by any and all persons, including the employees, agents, servants, passengers or guests of the carrier, in connection with the carriage of any and all goods and merchandise under this agreement.

[70] at 3, ¶ 8. See also [76] at 2, ¶ 8. JMC alleges that this clause requires Ranco to indemnify JMC "for any losses, expenses, damages or claims asserted in connection with the carriage of goods under the [Contract]." [41] at 5. JMC further alleges that it has "requested that * * * RANCO provide a defense and indemnification in the subject lawsuit and such request has been refused." *Id.* JMC asks that the Court award it its costs, expenses, attorneys' fees, and damages and, if judgment is entered against it, to enter judgment in its favor and against Ranco for an equal amount. *Id.*

## II. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (citation omitted).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir.2011) (quoting *Celotex Corp.,* 477 U.S. at 322 (1986)). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

Ranco moves for summary judgment on Count II of JMC's third-party complaint on the basis that the Contract's provision concerning indemnification is void, unenforceable, and against public policy under Illinois law governing motor carrier transportation contracts. JMC resists summary judgment by arguing that the Contract's indemnification provision should be read not as an indemnification provision, but as a contribution provision in which Ranco has waived its right to limit its contribution liability to an amount no greater than its workers' compensation liability. The Court concludes that the Contract's indemnification provision is unenforceable under the undisputed facts presented by the parties and, accordingly, grants summary judgment in favor of Ranco and against JMC on Count II of JMC's third-party complaint.

625 ILCS 5/18c-4105(a) is an anti-indemnity statute that was added to the Illinois Vehicle Code in 2009. The purpose of such statutes "is to rectify what many states * * * have perceived to be an inequitable 'shift of risk' in the shipper and carrier relationship in motor carrier transportation contracts when a carrier is contractually required to indemnify a shipper for

4

the shipper's own negligence." *Ruiz v. Carmeuse Lime, Inc.*, 2011 WL 3439221, at *5 (N.D. Ind. Aug. 4, 2011) (citing industry news publications). Section 5/18c-4105(a) provides that:

> Notwithstanding any other provision of law, a provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract that purports to indemnify, defend or hold harmless, or has the effect of indemnifying, defending or holding harmless, the promisee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the promisee is against the public policy of this State and is void and unenforceable.

625 ILCS 5/18/4105(a). For purposes of this provision, "motor carrier transportation contract" means "a contract, agreement, or understanding covering: (A) The transportation of property for compensation or hire by the motor carrier; (B) Entrance on property by the motor carrier for the purpose of loading, unloading, or transporting property for compensation or hire; or (C) A service incidental to activity described * * * above, including, but not limited to, storage of property." 625 ILCS 5/18c-4105(b)(1). The term "promissee" means "the promisee and any agents, employees, servants, or independent contractors who are directly responsible to the promisee except for motor carriers party to a motor carrier transportation contract with promisee, and such motor carrier's agents, employees, servants or independent contractors directly responsible to the motor carrier." *Id.* § 5/18c-4105(b)(2).

In this case, the Contract covers the "transportation of property for compensation or hire by [a] motor carrier" (625 ILCS 5/18c-4105(b)(1))—Ranco—and therefore is subject to § 5/18c-4105(a). Under JMC's theory that it is an intended third-party beneficiary of the Contract, JMC must be considered a "promisee"—*i.e.* "[o]ne to whom a promise is made"— under the Contract. BLACK'S LAW DICTIONARY (10th ed. 2014). Therefore, the Contract is "void and unenforceable" to the extent that it "purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless" JMC "from or against any liability for loss or

5

damage resulting from the negligence or intentional acts or omissions of" JMC. 625 ILCS § 5/18c-4105(a).

Plaintiffs' complaint alleges that JMC's negligent acts and omissions caused Burke's injuries. See [70] at 3, ¶ 10; [76] at 2, ¶ 10. JMC's third-party complaint alleges that the Contract requires Ranco to indemnify JMC for "*any* losses, expenses, damages, or claims" arising from the injuries Burke incurred while carrying goods under the Contract. [41] at 5, ¶ 14 (emphasis added). Under the facts of this case, if the Court were to interpret the Contract to require Ranco to indemnify JMC, this would have "the effect of indemnifying" JMC from its own alleged acts of negligence. 625 ILCS 5/18c-4105(a). The Court cannot enforce the Contract in this manner, because the Illinois General Assembly has made clear that such an indemnification provision is "void and unenforceable." *Id.* This statutory language is clear and unmistakable. No exceptions have been read into the statute in the two cases in which it has been cited. See *Northland Ins. Co. v. Barnhart Crane & Rigging Co.*, 2013 WL 6859279, at *8 (N.D. Ill. Dec. 30, 2013) (insurer of co-defendant Diamond had no duty to defend or indemnify co-defendant BCR in action brought against BCR and Diamond by individual who was injured while transporting a train girder owned by BCR using a tractor BCR; court would not interpret insurance policy to cover BCR as an "insured," because "indemnity agreements in motor carrier transportation contract are 'void and unenforceable' under Illinois law" (quoting 625 ILCS § 5/18c–4105; citing *K. Miller Const. Co. v. McGinnis,* 938 N.E.2d 471, 480 (Ill. 2010)); *K. Miller Const. Co.*, 938 N.E.2d at 480 (stating in dicta that "[t]he General Assembly is capable of stating when a contractual term that violates a statute is unenforceable," and citing 625 ILCS § 5/18c-4105 as an example).

JMC urges the Court to reject a "literal interpretation of the statute" and to interpret the Contract's indemnity provision not as an indemnity clause, but instead as a "contribution clause in which Ranco has waived any *Kotecki* cap." [75] at 3. The term "*Kotecki* cap" refers to Illinois law "cap[ping] an employer's contribution liability at 'an amount not greater than the [employer's] workers' compensation liability.'" *Baltzell v. R & R Trucking Co.*, 554 F.3d 1124, 1128 (7th Cir. 2009) (quoting *Kotecki v. Cyclops Welding Corp.,* 585 N.E.2d 1023, 1028 (Ill. 1991)). JMC's argument is based on the Illinois Supreme Court's decision in *Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295 (Ill. 1997), which interpreted the Illinois Construction Contract Indemnification for Negligence Act, 740 ILCS 35/0.01 *et seq*. ("Indemnification Act"). The purpose of the Indemnification Act "is to foster workplace safety by preventing a party from insulating itself from liability through use of a contractual indemnification provision which may deter the exercise of ordinary care." *Virginia Sur. Co. v. N. Ins. Co. of New York*, 2866 N.E.2d 149, 155 (Ill. 2007). The Indemnification Act would, for example, "render void a contractual provision in which a subcontractor agreed to pay all damages resulting from an injury to its employee, even the pro rata share of a general contractor who was partially at fault." *Id.* Section 1 of the Indemnification Act, which is similar to 625 ILCS 5/18/4105(a), provides that:

> With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building structure, * * * every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

740 ILCS 35/1.

In *Braye*, plaintiff Curtis Braye was employed by All Tri-R, Inc. ("All Tri-R") when he was injured in a fall from scaffolding at Archer Daniel Midland's ("ADM") manufacturing facility. *Id.* at 1297. Braye settled with All Tri-R and subsequently brought suit against ADM

7

for negligence. *Id.* ADM brought a third-party complaint against All Tri-R, seeking contribution pursuant to Illinois' Joint Tortfeasor Act. *Id.* The contract at issue in *Braye* provided:

> If [All Tri–R's] work under the order involves operations by [All Tri–R] on the premises of [ADM] or one of its customers, [All Tri–R] shall take all necessary precautions to prevent the occurrence of any injury to person or damage to property during the progress of such work and, except to the extent that any such injury or damage is due solely and directly to [ADM's] or its customer's negligence, as the case may be, [All Tri–R] shall pay [ADM] for all loss which may result in any way from any act or omission of [All Tri–R], its agents, employees or subcontractors[.]

*Braye*, 676 N.E. 2d at 1301-02. All Tri-R argued that this provision was an indemnification agreement that is unenforceable pursuant to section 1 of the Indemnification Act. *Id.* at 1302 (citing 740 ILCS 35/1 (1994)). According to All Tri-R, its contract with ADM suggested that, "if there is concurrent fault between All Tri-R and ADM, then the financial burden of a loss shifts to All Tri-R," which would violate section 1 of the Indemnification Act. *Id.* ADM argued, by contrast, that the contract did not violate the Indemnification Act because "it provides that All Tri–R agreed to pay for 'all' liability stemming from 'any act or omission of [All Tri–R], its agents, employees or subcontractors,' *i.e., its own* negligent conduct." *Id.* ADM also acknowledged that it would be prohibited from seeking indemnity from All Tri-R. *Id.* The Illinois Supreme Court found that the contract was not void as against public policy, but instead should be read as an enforceable contract for contribution that was not subject to the *Kotecki* cap. *Braye*, 676 N.E.2d at 1303-04. The court recognized that "a contract should not be deemed illegal unless it is expressly contrary to the law or public policy." *Id.* at 1303. The court then determined that All Tri-R and ADM's contract was a contribution clause that waived the *Kotecki* cap, rather than an unenforceable indemnification clause, because: (1) "ADM was presumed to know that indemnity promises are void in violation of public policy, and that a court would not enforce any contractual language which would suggest such a promise"; and (2) "ADM

concede[ed] that from the inception of the contract, any attempt to seek indemnity" (rather than contribution) "from All Tri–R would be futile." *Id.* at 1303-04.

*Braye* does not change the Court's conclusion that JMC's contractual indemnity claim (Count II) is barred by 625 ILCS 5/18c-4105(a). *Braye* was construing a different statute than the one at issue here, and involved whether a third-party plaintiff is allowed to bring a *contribution* claim, not an *indemnification* claim like the one asserted by JMC. Although *Braye* and this case involve the application of similar statutory language, the Court is hesitant to read an exception into section 5/18c-4105(a) when no Illinois court (nor the Seventh Circuit) has done so. Assuming *Braye* and other cases construing section 1 of the Indemnification Act are applicable, their analysis does not lead the Court to view the Contract's indemnification provision as a contribution clause that waives the *Kopecki* cap. Unlike ADM in *Braye*, JMC asks this Court to interpret the Contract's indemnification clause in a manner that would be "expressly contrary to the law [and] public policy" as set forth in 625 ILCS 5/18c-4105(a). *Braye*, 676 N.E. 2d at 1303. Plaintiffs have sued JMC for damages that they allege were caused by JMC's negligence. JMC alleges in its third-party complaint that Ranco has a contractual duty to indemnify it for those damages, including the attorneys' fees and costs JMC incurs in this litigation and any judgment Plaintiffs obtain from JMC. If Plaintiffs prevailed on their claims against JMC and the Court enforced the Contract's indemnification provision against Ranco, it would be ordering Ranco to indemnify JMC for JMC's own negligence. The Court cannot do this without running afoul of the clear and unambiguous language of 625 ILCS 5/18c-4105(a), regardless of whether it characterizes the Contract as one for indemnification or contribution.

The Court is also guided by the Illinois Supreme Court's decision in *Liccardi v. Stolt Terminals, Inc.*, 687 N.E.2d 968 (1997), which was decided shortly after *Braye*. In *Liccardi*, an

employee of Gundersen sustained fatal injuries in a fall from scaffolding while performing work for Stolt. *Id.* at 970. The employee's estate sued Stolt under the Structural Work Act. *Id.* Stolt brought a third-party action against Gundersen. *Id.* In count I, Stolt alleged that Gundersen had a contractual obligation to indemnify it for "the costs, fees, losses or payments incurred by or awarded against Stolt in the underlying proceeding only 'to the extent said costs, fees losses or payments are the proximate result of the wrongful acts or omissions of [Gundersen].'" *Id.* at 973. The indemnification clause at issue—paragraph seven of the contract—provided:

> If Vendor [Gundersen] performs services * * * hereunder, Vendor agrees to indemnify and hold harmless Stolt Terminals (Chicago) Inc. from all loss or the payment of all sums of money by reason of all accidents, injuries, or damages to persons or property that may happen or occur in connection therewith.

*Id.* at 970. Gundersen argued that this provision was "void and unenforceable under the * * * Indemnification * * * Act on the grounds that they require Gundersen to indemnify Stolt for Stolt's own negligence." *Id.* at 971. Stolt took the contrary position that the provision "operated as a waiver of the *Kotecki* cap on Gundersen's contribution liability." *Id.* The Illinois Supreme Court found under the specific facts of the case that the provision was enforceable and operated as a waiver of the *Kotecki* cap. *Id.* at 973. The court explained that "the literal terms of a contract are not necessarily dispositive on the issue of whether it is void under the Construction Contract Indemnification for Negligence Act." *Id.* at 972. Since parties are free to contract, "a contract should not be deemed illegal unless it is expressly contrary to the law or public policy." *Id.* Thus, "[w]hether a contract violates public policy depends on the peculiar facts and circumstances of each case, as well as the language of the contract itself." *Id.*

The court identified two factors that weighed in favor of enforcing the parties' contract. First, the court found that "Stolt was presumed to know that indemnity promises in construction contracts are void in violation of public policy and that a court would not enforce any contractual

10

language that would suggest such a promise." *Liccardi*, 687 N.E. 2d 973. This indicated to the court that Stolt had not intended to contract away liability for its own negligence. Second, the court found that "there is no indication that Stolt ever believed that the contract here entitled it to indemnification for its own negligence." *Id.* "To the contrary," the court found, "it is clear from the specific allegations in count I of Stolt's third-party action that Stolt understood paragraph seven as authorizing recovery from Gundersen of the costs, fees, losses or payments incurred by or awarded against Stolt in the underlying proceeding *only 'to the extent said costs, fees losses or payments are the proximate result of the wrongful acts or omissions of [Gundersen].'*" *Id.* (emphasis added).

Considering the same two factors that the *Liccardi* court considered and "the language of the contract itself," this Court reaches a different conclusion than *Liccardi* based on "the peculiar facts and circumstances" of this case. *Liccardi*, 687 N.E.2d at 972. As to the first factor, the parties here, like the parties in *Liccardi*, are presumed to know that their contract was void to the extent it purported to indemnify JMC from its own negligence. As to the second factor, however, in this case there is much more than a mere "indication" that JMC "believe[s] that the contract here entitled it to indemnification for its own negligence." *Liccardi*, 687 N.E. 2d at 973. That is the whole thrust of JMC's claim for contractual indemnification. JMC asks for indemnification for all costs incurred by or awarded against JMC in the underlying proceeding— a proceeding that is premised on JMC's alleged negligence. JMC does not limit its request for indemnification to costs or awards that it incurs as a "proximate result of the wrongful acts or omissions" of Ranco. *Id.* Instead, JMC "construes [the Contract] as relieving it of its liability for its own acts or omissions." *Id.* JMC's reading of the Contract would "extinguish [JMC's] incentive to exercise due care" when working with motor carriers, *id.*, and undermine the

11

apparent purpose of 625 ILCS 5/18c-4105(a).  Cf. *Jandrisits v. Vill. of River Grove*, 669 N.E.2d 1166, 1169-70 (Ill. App. 1996) (village's indemnity agreement with contractor it hired to do sidewalk replacement work violated section 1 of the Indemnity Act for purposes of negligence action against village by pedestrian who was injured in slip and fall, where the allegations of the complaint against the village imposed liability directly attributable to the village's own negligence, not vicariously or strictly); *Motor Vehicle Cas. Co. v. GSF Energy, Inc.*, 549 N.E.2d 884, 889 (Ill. App. 1989) (indemnification agreement between contractor and energy company under which contractor agreed to indemnify energy company for liability arising exclusively from contractor's work performance did not on its face violate section 1 of Indemnity Act, but, as applied to energy company's attempt to invoke protection of agreement with respect to its own liability under the Structural Work Act, the agreement violated the Indemnity Act and was void as against public policy).

Finally, the express language of the Contract itself requires Ranco to indemnify, defend, and hold harmless brokers, shippers and consignees from *any* losses arising from the carriage of goods under the Contract.  The indemnification language is not limited, for example, to losses that Ranco caused or to any losses that were not caused by the broker, shipper, or consignee's negligence or intentional misconduct.  Cf.  *Econ. Mech. Indus., Inc. v. T.J. Higgins Co.*, 689 N.E.2d 199, 202-03 (1997) (provision of lease agreement, under which lessee was to indemnify lessor from "*any and all* loss, cost, damage or expense, arising out of or from any accident or other occurrence on or about the Premises," was sufficient to require lessee to indemnify lessor from lessor's negligence, and as such was void as against public policy expressed in 765 ILCS 705/1(a) (1996), which provided that "[e]very covenant, agreement or understanding in or in connection with or collateral to any lease of real property, exempting the lessor from liability for

12

damages for injuries to person or property caused by or resulting from the negligence of the lessor * * * in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable" (emphasis added)). Under the undisputed facts set forth by the parties, the Court concludes that the Contract's indemnification provision is not a "valid contractual provision" and cannot be construed as "a contractual waiver of the *Kotecki* cap." *Liccardi*, 687 N.E. 2d at 971. Therefore, Ranco is entitled to summary judgment against JMC on Count II of JMC's third-party complaint.

## IV. Conclusion

For the reasons stated above, the Court grants Ranco's motion [68] for partial summary judgment. Judgment is entered in favor of Ranco and against JMC on Count II of JMC's third-party complaint [41]. Counts I and III of the third-party complaint remain in the case.

Dated: February 5, 2016

Robert M. Dow, Jr.
United States District Judge